452 So.2d 68 (1984)
Pierre Cesar ORANTES and Salvatore Francis Vastola, Appellants,
v.
STATE of Florida, Appellee.
Nos. AS-5, AS-298.
District Court of Appeal of Florida, First District.
May 22, 1984.
Rehearing Denied June 27, 1984.
*69 Stephen N. Bernstein, Gainesville, for appellant Orantes.
Robert A. Harper, Jr., Tallahassee, for appellant Vastola.
Jim Smith, Atty. Gen., and David P. Gauldin, Asst. Atty. Gen., for appellee.
NIMMONS, Judge.
Orantes and Vastola appeal their convictions of conspiracy to traffic in cannabis in violation of Sections 777.04 and 893.135, Florida Statutes (1981). They were charged with conspiring to possess in excess of 100 pounds of cannabis. We affirm.
In April, 1982, the Narcotics and Organized Crime Unit (N.O.C.U.) of the Gainesville Police Department caused a civilian undercover operative, Ronald Hoover, to be placed in a residence near that of Arthur Gower, a suspected pilot for drug smugglers. Hoover began associating with Gower for the purpose of gaining his trust, the object being to determine whether Gower and his drug-dealing associates would purchase illicit drugs if offered. This type of operation is commonly known as a "reverse sting." Detective Crase of N.O.C.U. was to assume the role of a drug seller who had available to him a large quantity of cannabis.
On May 21, 1982, Hoover informed Gower that he knew a person (Crase) who had a large quantity of cannabis for sale. Subsequently, Gower returned a telephone call which Crase had placed to Gower. During that conversation and a succeeding telephone conversation that same day, Crase told Gower that he had a large quantity of cannabis which he needed to "unload." Gower expressed interest in purchasing the cannabis and they agreed to a meeting the following day, May 22, in Orlando, to be attended by Hoover, Crase and Gower. The meeting was held as planned at a Holiday Inn in Orlando. The room, which was rented by the investigating officers, was wired for electronic surveillance. At the meeting, they discussed the quantity which would be purchased, which quantity, at that time, varied between 1200 to 1600 pounds. During the meeting, Gower made several telephone calls in an effort to reach "his people" in Washington, D.C. Eventually, one of Gower's telephone calls was returned after which Gower advised Crase and Hoover that "his man" was flying to Orlando to meet with them. That man turned out to be the defendant Orantes.
By prearrangement, Orantes was met at the Orlando airport on May 23 by Gower and Hoover after which they proceeded to Gainesville. There, Hoover introduced Orantes to Crase over the telephone, and they arranged for Crase to show Orantes the cannabis that night at Hoover's residence. Crase checked out two bales of cannabis from the Gainesville Police Department property room. Hoover picked up Crase and they proceeded to Hoover's residence where they met with Orantes and Gower. During the ensuing conversation, Orantes acknowledged that he was experienced in this kind of thing. Crase showed Orantes a sample of the cannabis. Although Orantes expressed concern that it appeared dry, he indicated that "they" were interested in purchasing the cannabis. He did not yet know the exact quantity they would purchase and said that he would have to contact "his man." Orantes did say that they would agree to a price of $230 per pound. Orantes said that he was interested in dealing with Crase because some of his sources had been arrested. Orantes said that they liked to use automobiles in order to use back roads and avoid weigh stations.
*70 The meeting ended with the understanding that Crase would call Orantes at midnight in order to give Orantes time to make contact with his man. Crase did call Orantes as planned and they discussed consummating the transaction. Later that evening, May 25, 1982, Orantes was observed picking up Vastola at the Gainesville airport. Orantes telephoned Crase and they arranged to meet at Hoover's residence. There, Crase, Orantes and Vastola went into a bedroom where Vastola examined a sample of the cannabis. He told Orantes, "It's exactly the color you said it was. It's a little dry. I won't have any problems with it. I'll take it." Crase pulled Orantes aside to determine whether Orantes was charging Vastola an additional fee over and above the previously negotiated $230 per pound. Orantes told Crase that there was no such fee arrangement between Vastola and him (Orantes).
The subject of conversation then turned to the mechanics of consummating the purchase. Vastola said that he had arranged for a man to drive from D.C. in an LTD with the $90,000 cash purchase price and that he would be arriving in a couple of hours. This was in the early morning hours of May 26. The meeting broke up and Crase left. He briefed other officers on the status of the investigation and went home. After resting a few hours, Crase telephoned Gower and was advised that everything was "go" and to be at Hoover's residence at 9:30 a.m. When Crase arrived at Hoover's residence, already present were Orantes, Vastola, Hoover and Gower. Vastola walked to a Ford LTD with a Washington, D.C. license tag, removed a briefcase from the trunk and brought it back inside the house. Vastola opened the briefcase and showed Crase $90,000 in cash contained in two brown paper bags.
They then decided to go to the "stash house" where the exchange would take place. Vastola and Orantes went in the LTD together with the money and followed Crase's vehicle. After traveling a short distance, Vastola and Orantes were stopped by surveillance officers and placed under arrest.
Appellants have raised numerous points on appeal, some of which points merit discussion. Appellants claim that the trial court erred in denying their motion for mistrial after Detective Crase, in violation of a pretrial ruling, characterized Orantes and Vastola as "partners." This occurred during Crase's testimony describing his conversation with Orantes when Crase was trying to determine whether Orantes was charging Vastola any fee over and above the negotiated $230 per pound purchase price. As previously mentioned in our summary of the testimony, Crase testified that Orantes told him there was no such fee or charge. Crase then volunteered his conclusion, "They were partners." In the absence of the jury, the court heard arguments on the defendants' motion for mistrial. Although Crase admitted that Orantes did not characterize his relationship with Vastola as that of a partnership, Crase testified that Orantes did say that he and Vastola "were in it together." Although the trial court denied the defendants' motion for mistrial, he did instruct the jury to disregard Crase's characterization of the relationship between Vastola and Orantes as a partnership. We find that the trial court did not err in denying the motion for mistrial.
Orantes contends that the evidence was not sufficient to support a conspiracy charge as to him. He says that, although the evidence may have been sufficient to establish that he aided and abetted Vastola, conspiracy is a separate and distinct charge, the elements of which were not established by the evidence. Orantes says that, as the defendant in Schueren v. State, 370 So.2d 83 (Fla. 1st DCA 1979), he was merely a "go-between in a transaction involving others." We disagree. The crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense and an intention to commit such offense. 16 Fla.Jur.2nd Criminal Law § 1547. The evidence in the case at bar was sufficient to support both an agreement between Orantes *71 and Vastola and the requisite intent to possess the cannabis.
Appellants also contend that the trial court erred in denying a requested jury instruction to the effect that when two or more persons conspire with a government agent with the intention that an essential element of the offense be performed only by the agent, there is no criminal conspiracy. Although that principle of law is a correct one under the holding in King v. State, 104 So.2d 730 (Fla. 1958), it has no application in the case at bar. In order for the King rule to apply to an alleged criminal conspiracy, the agreement must be that "an essential ingredient of the offense [conspired to be committed] is to be performed by, and only by, such government agent." 104 So.2d at 733 (emphasis supplied). It cannot be said in the instant case that there was any element of the crime of possession of over 100 pounds of cannabis, the offense conspired to be committed, that was to be performed only by a government agent. See Williams v. State, 383 So.2d 722, 725 (Fla. 1st DCA 1980). Moreover, the fact that a government agent was the source of the defendant's anticipated possession of the cannabis does not, in our view, call for application of the King rule. See Cristadero v. State, 426 So.2d 977 (Fla. 4th DCA 1982); cf. United States v. Lee, 622 F.2d 787 (5th Cir.1980).
Appellants further contend that the trial court erred in denying their motions to dismiss on the grounds that Section 893.135, Florida Statutes, should have been regarded as unconstitutional as applied to them. They contend that in a reverse sting operation such as this, it is impossible for the defendant to have the opportunity to relief under Section 893.135(3) from the mandatory sentence provisions of the statute. That section provides:
(3) The state attorney may move the sentencing court to reduce or suspend the sentence of any person who is convicted of a violation of this section and who provides substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, coconspirators, or principals. The arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any such motion. Upon good cause shown, the motion may be filed and heard in camera. The judge hearing the motion may reduce or suspend the sentence if he finds that the defendant rendered such substantial assistance.
We reject appellants' argument because the mandatory minimum sentence provisions of Section 893.135 were not even applicable to them inasmuch as they were only charged with conspiracy to violate Section 893.135.[1] Nor did the trial court impose any mandatory minimum sentence. He simply sentenced Vastola and Orantes, respectively, to terms of five years and three years imprisonment. The appellants are hardly in a position to urge the above constitutional issue. Even if Section 893.135 did encompass conspiracies and its mandatory minimum provisions applied to such conspiracies as well as the completed acts, the appellants' arguments would still be unavailing. In State v. Benitez, 395 So.2d 514 (Fla. 1981), the court stated:
Appellees' suggestion that subsection (3) denies equal protection of the law to convicted defendants who cannot provide "substantial assistance" to law enforcement officials is patently without merit. This legislation manifestly passes the rational basis test. See Hamilton v. State, 366 So.2d 8 (Fla. 1978).
We have examined the remaining points urged by appellants including the trial court's failure to give certain defense requested instructions, the trial court's limitation of cross-examination of Hoover, and violation of due process by prosecutorial "overreaching" in this reverse sting operation, and find such points to be without merit.
AFFIRMED.
MILLS and SMITH, JJ., concur.
NOTES
[1] We note that, by virtue of Chapter 82-2, Laws of Florida, the present statute now includes conspiracies to traffic. See Section 893.135(4), Florida Statutes (1983). The effective date of that amendment was October 1, 1982, several months subsequent to the instant conspiracy.