514 So.2d 406 (1987)
Robert Neil CUMMINGS, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-2008.
District Court of Appeal of Florida, Fourth District.
October 28, 1987.
Douglas J. Glaid, Asst. Sp. Public Defender, Fort Lauderdale, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
Robert Neil Cummings, together with two other persons, was charged by information with conspiracy to traffic in cannabis. The other two were charged in the same information additionally with trafficking in cannabis. Defendant at the appropriate time moved for judgment of acquittal, but his motion was denied. The jury found appellant guilty, and the court subsequently sentenced him to a term of four and one-half years' imprisonment, including a minimum mandatory drug trafficking sentence of three years. Appellant's motion for new trial was denied. We affirm.
Appellant and codefendant Joseph "Buddy" Howard met undercover detective Joseph Martel at Denny's Restaurant on August 24, 1984. The meeting was arranged by a confidential informant. Martel represented himself to be a drug smuggler and it was Martel's understanding that the people he was meeting were interested in buying some marijuana. Howard said he had some people down from New York who wanted to buy a large amount of marijuana. There was a general discussion of weight and prices. The discussion continued outside the restaurant. Howard proposed that Martel supply a sample of the marijuana he would be selling them. Martel demurred, but offered to give a sample to Howard's "money men." Howard left briefly to consult with his New York money men by telephone. While Howard was away, appellant started talking about the possibility of buying cocaine. When Howard returned he said the "money men" would not agree to Martel's proposal. Howard insisted on a sample. The participants agreed to discuss the matter further a week later. This entire conversation was recorded by Detective Futch, but because of technical difficulties one side of the tape was practically unintelligible. This tape was admitted into evidence over appellant's objection.
In a telephone conversation with Howard on August 29, 1984, Martel was told that Howard's people wanted a sample before entering a transaction. Howard wanted *407 the transaction to take place at his house, but Martel refused this request. Originally Howard proposed to buy 300 pounds of marijuana at $290 per pound. Later he said his New York people had already acquired some of their needed supply, and were interested in only 100 pounds. To open a channel, they desired only $100 worth. Martel and Howard agreed to meet that afternoon at a Hollywood Howard Johnson, where Martel would give Howard a sample. This was done.
Martel and Howard talked on the telephone again on the following day. Howard said he had not heard from his New York person, but another buyer named Ken wanted to see some of the sample and was interested in buying 200 pounds. Subsequently, the negotiations ceased, because Howard said he had heard neither from his New York person nor from Ken. Detective Martel said on cross examination he had no contact with appellant from the initial meeting on August 24, 1984 until January 28, 1985.
Codefendant Howard contacted Martel on December 1, 1984, stating he had a buyer coming to Miami to purchase 200 pounds of marijuana. They agreed on a price of $275 per pound for 200 pounds. They spoke again the following day, confirming a total price of $55,000. There were periodic further contacts between Howard and Martel during December, but no transaction was concluded.
On January 25 and 27, 1985, appellant had several telephone conversations with Detective Glenn Parker, during which appellant said he had a deal set up for 200 pounds of marijuana at $280 per pound, via his New York person. Appellant suggested that Martel call Howard. Martel talked with appellant and then with Howard, who confirmed the availability of the purchaser of the amount and at the price mentioned by appellant. Martel then talked again with appellant, who said he and Howard were partners.
There were subsequent contacts between Howard and Martel. Howard told Martel his man was flying in to Fort Lauderdale on January 28. That afternoon, Howard told Martel the man came in with only $50,000, and Martel said he could give Howard 188 pounds for that amount. Martel asked Howard whether he could come up with $50,000, and Martel heard Howard ask someone else in the room, "Macch, can we make fifty-one?"
Howard asked whether appellant could take part in the transaction, and Martel said he preferred that appellant not participate. Howard said this was all right with him; that he and appellant were partners, and appellant would understand, albeit he and appellant were partners, and appellant wanted to be present. Later that day, Martel again spoke with appellant, who said he understood he was not coming into the deal, and that he wanted to speak to Martel about possible future deals.
Later the same day, the transaction was consummated between Martel and Parker as sellers and Howard and Macchirole as buyers at Denny's, and these two codefendants were arrested by police backup units. The amount of the marijuana delivered was 179 pounds, six ounces; Macchirole turned over to the officers $50,000 he was carrying in a white shopping bag.
Subsequently, Parker and Martel talked with appellant, who said he was unhappy at not having received his profit from the transaction. About a week later, appellant was arrested.
The issue is whether appellant's conviction on an information charging him with a conspiracy to traffic in a controlled substance was error, in that the evidence was created by proof of multiple conspiracies, and there is therefore a material variance between the charging instrument and the evidence. We conclude it was not.
In brief, appellant's argument is that the proof adduced at trial relates to at least three distinct conspiracies, whereas the information charged only one; and that this circumstance constitutes a material variance between information and proof that is prejudicial to appellant. The state points out that the codefendants raised the same argument without success in their appeals to this court, Macchirole v. State, *408 502 So.2d 91 (Fla. 4th DCA 1987), and Howard v. State, 502 So.2d 433 (Fla. 4th DCA 1987). As these are respectively a short per curiam affirmance reversing only a downward sentencing departure, and a PCA, they have no precedential value, e.g., Department of Legal Affairs v. District Court of Appeal, 5th District, 434 So.2d 310 (Fla. 1983), and they are in any event unenlightening.
Appellant does not describe the present situation as one in which there were more than one simultaneous conspiracies, as a result of which he was tainted by the evidence of the ones he was not involved in; rather, he suggests there were three conspiracies in succession, and he was not a party to all three. (If there had been three successive conspiracies, as he claims, it is quite clear he would have been a party to at least two of them.) But according to the cases it is entirely proper to perceive an ongoing conspiracy involving three transactions or near-transactions. It is stated in Cam v. State, 433 So.2d 38 (Fla. 1st DCA 1983), that an agreement is a primary element of a conspiracy, and that the agreement may go on for a long period of time and include the performance of numerous transactions. The conspiracy goes on until its object is completed, or it is abandoned, or terminated by some affirmative act. Moreover, new parties may join and old parties leave; yet the original conspiracy goes on if there is no evidence it has been completely carried out, abandoned or otherwise affirmatively brought to an end. Interestingly, in Cam, it was the defendants who contended that there was one conspiracy, not two; they had been charged with and convicted of two conspiracies, because there had been two transactions.
Here, as in Cam, there is no evidence that the conspiracy involving Cummings was in some manner or for some reason abandoned or terminated, or that Cummings withdrew from it. There is only a lapse in communication between the purported suppliers and Cummings as an individual. The state cites numerous cases from the federal courts that support the reasoning that this is a single ongoing conspiracy rather than three conspiracies in series. See, e.g., United States v. Rosen, 764 F.2d 763 (11th Cir.1985). There it was held that because there was a common object  to import marijuana  the court could properly find that there was a single conspiracy, even though there were two flights to Jamaica in connection with the object, and albeit the defendant was involved with only one of the two flights.
The cases state further that if it is shown that a person has joined a conspiracy with knowledge of its general purpose and scope, that person may be held liable for all of the activity carried on to further the conspiracy, even that which took place before he joined. See United States v. Corbin, 734 F.2d 643, 652 (11th Cir.1984); United States v. Wilson, 500 F.2d 715, 727 (5th Cir.1974); United States v. Knight, 416 F.2d 1181, 1184 (9th Cir.1969); United States v. Gregory, 611 F. Supp. 1033, 1038 (D.C.N.Y. 1985). A defendant may be found guilty of conspiracy if he had knowledge of its essential objective and voluntarily became a part of it, even if he lacked knowledge of all the details of the conspiracy or played only a minor role in the total operation. United States v. Bascaro, 742 F.2d 1335, 1359 (11th Cir.1984), and cases cited therein.
DELL and GUNTHER, JJ., concur.