619 So.2d 369 (1993)
Douglas ISOM, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-2217.
District Court of Appeal of Florida, Third District.
May 25, 1993.
*370 Hamar & Hamar and Richard Hamar, Playa Del Rey, CA, for appellant.
Robert A. Butterworth, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and NESBITT and COPE, JJ.

*371 CORRECTED OPINION
COPE, Judge.
Douglas Isom appeals his convictions and sentences for one count of trafficking in cocaine and two counts of conspiracy to traffic in cocaine. We affirm in part and reverse in part.
Defendant first contends that there was insufficient evidence to convict him of count I, trafficking in one kilo of cocaine, and count II, conspiracy to traffic in the same kilo of cocaine.
Reading the record in the light most favorable to the State, the evidence established that defendant was directing drug transactions from his cell in the Dade County Jail. These were being carried out by defendant's wife and other individuals.
On March 9, 1988 one of defendant's confederates, Anthony Cutler, agreed to purchase a kilo of cocaine from persons who turned out to be undercover police officers with the Miami Beach Police Department. After Cutler was arrested, he agreed to provide assistance to the police. He agreed to have the police officers tape telephone conversations which Cutler placed. Cutler called Mrs. Isom, the defendant's wife. While the two were on the telephone, the defendant called Mrs. Isom from the County Jail. Mrs. Isom then connected the three parties so that there was a three-way conversation between defendant, Mrs. Isom, and Cutler.
In the conversation defendant stated his understanding that Cutler was to have obtained cocaine that day at a 3:00 o'clock meeting with persons who were not specifically identified. Cutler stated that he had purchased a kilo of cocaine and that he had used the defendant's car in the transaction. The transaction to which Cutler referred, of course, was the transaction in which Cutler (unbeknownst to defendant and Mrs. Isom) had been arrested. Other evidence in the case indicated that the defendant had directed Mrs. Isom to give Cutler the money for the transaction.
In the taped conversation Cutler also stated, however, that he had purchased the cocaine in what Cutler referred to as the "Beach deal." Defendant indicated that he did not know anything about a "Beach deal" and that the cocaine was to have been obtained at the 3:00 o'clock meeting. Defendant became very angry and demanded to know with whom Cutler and Mrs. Isom were dealing. He quizzed Cutler at length about the details of the transaction, told Cutler that the Beach deal sounded too good to be true, and warned Cutler that when a deal sounded too good to be true, there was a danger that undercover police officers would be involved.[1] Defendant made clear that he was in charge and that he did not want Cutler and Mrs. Isom to engage in transactions with people he had not approved.
Eventually Cutler mollified Isom by telling him that he knew the persons with whom he was dealing and that he had seen them consume drugs. This apparently allayed defendant's fear that the sellers were undercover police officers. A discussion then ensued in which it was agreed that Cutler would be authorized to purchase an additional kilo of cocaine from the same sellers, and then two more kilos if the first transaction went smoothly. Defendant would provide the funds. When purchased, the cocaine would be brought to Mrs. Isom for testing and then for "cooking" before distribution.
The State charged defendant with three offenses. In count I, the State charged defendant with trafficking in the first kilo of cocaine, which was the kilo of cocaine Cutler had purchased from the undercover officers on March 9, resulting in Cutler's arrest. Count II charged defendant with conspiracy to traffic in cocaine, with respect to the same kilo. Count III charged defendant and Mrs. Isom (but not Cutler) with conspiracy to traffic in additional kilos of cocaine pursuant to the discussion at the end of the taped conversation.
As to counts I and II, defendant contends that the evidence is insufficient to support *372 his conviction. He states that the only fair reading of the tape recorded conversation is that he knew nothing about the "Beach deal" until after it had occurred. Since defendant did not know about the Beach deal until it had already transpired, he argues that there is no way that he can be convicted of trafficking (count I), or conspiracy to traffic (count II) with respect to the first kilo of cocaine. We disagree.
Under the Florida Statutes, "Whoever commits any criminal offense against the state ... or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense." § 777.011, Fla. Stat. (1991).
Here, the evidence indicated that defendant had provided the funds, and allowed his car to be used, for Cutler to purchase a kilo of cocaine on March 9, 1988. The defendant had understood that the cocaine was to be purchased in what defendant referred to as the 3:00 o'clock meeting. However, Cutler instead purchased a kilo of cocaine in the "Beach deal." In other words, defendant had financed the purchase of cocaine and Cutler had proceeded to purchase cocaine. Cutler had, however, purchased from a different source than the source agreed to by defendant.
The acts of defendant rendered him a principal within the meaning of the statute. The rule applicable here is that "[o]ne who incites the commission of a crime is guilty even if the perpetrator varies the method of perpetration, as where the counsel or command was to poison the victim and the perpetrator resorted to stabbing or shooting... . But he is not guilty of a crime committed by the perpetrator which is entirely other than the one incited and not an incidental result thereof, as where the incitement was to commit arson and the perpetrator committed robbery." Rollin M. Perkins & Ronald M. Boyce, Criminal Law 745 (3d ed. 1987) (footnotes omitted). Here, defendant counseled and procured the purchase of cocaine by Cutler, and provided his car and financing for the transaction. The fact that Cutler purchased the cocaine in the "Beach deal" rather than the 3:00 o'clock transaction contemplated by defendant is immaterial.
As to count II, the evidence established an agreement to commit the criminal offense and an intention to commit it. See, e.g., Orantes v. State, 452 So.2d 68, 70-71 (Fla. 1st DCA), review denied, 461 So.2d 115 (Fla.), review denied sub nom. Vastola v. State, 461 So.2d 116 (Fla. 1984). The evidence on that count was sufficient as well.
Defendant next contends that the trial court erred by admitting into evidence Cutler's post-arrest statement that defendant had told Mrs. Isom to give Cutler the money with which to purchase the cocaine. We agree that Cutler's post-arrest statement was not in furtherance of the conspiracy and therefore was not admissible under the coconspirator hearsay exception. See § 90.803(18)(e), Fla. Stat. (1991). However, the testimony had already come in without objection in two questions and answers prior to the time that the hearsay objection was made. In addition, the response may well have been invited, given that the witness' previous answers on cross-examination had made clear that the witness' answers were gleaned from the same post-arrest hearsay statement. Whether or not the testimony was invited, any error with respect to the hearsay objection was harmless where the same information had already been placed before the jury without objection.
Defendant next contends that the trial court erred in two respects in giving the jury instructions on count III, the conspiracy to traffic in several additional kilos of cocaine. Defendant urges that the trial court erred by denying him a special instruction based on the rule in King v. State, 104 So.2d 730 (Fla. 1958). Defendant also contends that the instruction actually given by the trial court was an inaccurate statement of the law.
*373 Count III in this case charged that the defendant had conspired with Mrs. Isom to traffic in cocaine. The count II conspiracy was the conspiracy to acquire the one kilo of cocaine which was purchased on March 9. Count III referred to the conspiracy which unfolded in the taped three-way telephone conversation between defendant, Mrs. Isom, and Cutler. As to the latter transaction, defendant and Mrs. Isom were charged with conspiring with each other, but not with Cutler. Cutler was presumably excluded from count III because he was acting as a police agent during the taped telephone conversation.
At the charge conference defendant requested a special instruction based on King v. State. The requested instruction stated essentially that defendant could not be guilty of conspiracy if the only other party to the conspiracy was a police officer or agent for a police officer. See 104 So.2d at 732. The instruction also stated "Where 2 or more persons conspire with another who is[,] unknown to them, a government agent, to commit an offense under an agreement and an intention that an essential ingredient of the offense is to be performed by, and only by, such government agent, such persons may not legally be convicted of a conspiracy." See id. at 733.
Under the circumstances existing at the time of the charge conference, the requested special instruction was correctly denied. First, on count III the State did not charge the defendant with conspiracy with Cutler, who was, by the time of the count III conspiracy, a government agent. The only conspiracy charged was between defendant and Mrs. Isom. The jury was to be so instructed. Accordingly, the first part of the proposed special instruction  dealing with a conspiracy consisting solely of defendant and a government agent  was correctly denied. See Orantes v. State, 452 So.2d at 71; State v. Cristodero, 426 So.2d 977, 978-80 (Fla. 4th DCA 1982), review denied sub nom. O'Donnell v. State, Rossi v. State, 436 So.2d 100 (Fla. 1983); McCain v. State, 390 So.2d 779, 780 (Fla. 3d DCA 1980), review denied, 399 So.2d 1144 (Fla. 1981). Because the charge required the jury to find a conspiracy between the defendant and Mrs. Isom, the first part of the requested special instruction was irrelevant.
The second part of the special instruction was properly denied under authority of Orantes v. State:
Appellants also contend that the trial court erred in denying a requested jury instruction to the effect that when two or more persons conspire with a government agent with the intention that an essential element of the offense be performed only by the agent, there is no criminal conspiracy. Although that principle of law is a correct one under the holding in King v. State, 104 So.2d 730 (Fla. 1958), it has no application in the case at bar. In order for the King rule to apply to an alleged criminal conspiracy, the agreement must be that "an essential ingredient of the offense [conspired to be committed] is to be performed by, and only by, such government agent." 104 So.2d at 733 (emphasis supplied). It cannot be said in the instant case that there was any element of the crime of possession of over 100 pounds of cannabis, the offense conspired to be committed, that was to be performed only by a government agent. See Williams v. State, 383 So.2d 722, 725 (Fla. 1st DCA 1980). Moreover, the fact that a government agent was the source of the defendant's anticipated possession of the cannabis does not, in our view, call for application of the King rule. See Cristodero v. State, 426 So.2d 977 (Fla. 4th DCA 1982); cf. United States v. Lee, 622 F.2d 787 (5th Cir.1980).
452 So.2d at 71.
As stated in State v. Cristodero:
The possession involved in this conspiracy is not the possession of the seller-police agent, but the anticipated possession of the defendants. Therefore, they intended to and agreed with each other to commit all of the ingredients of the crime charged. Simply because the government agents were to deliver the cannabis to the defendants at the scene does not mean the police alone were to commit *374 an essential element of the substantive crime.
426 So.2d at 979.
Here, the evidence showed that the defendant was to provide the funds. Cutler was to purchase one additional kilo of cocaine. Cutler was to deliver the cocaine to Mrs. Isom for testing. Mrs. Isom would then "cook" the cocaine and distribute it. If this additional transaction went smoothly, more cocaine would be purchased. As was true in Orantes and Cristodero, we do not see that there was any essential ingredient of the offense which was to be committed solely by a government agent. See also McCain v. State, 390 So.2d at 780; Williams v. State, 383 So.2d 722, 725 (Fla. 1st DCA 1980), approved on other grounds, 397 So.2d 663 (Fla. 1981).
When the jury was actually instructed, however, the trial court inadvertently misidentified the alleged conspirators. As charged in the information, and as agreed at the charge conference, the conspirators in the count II conspiracy  the pre-arrest conspiracy  were defendant, Mrs. Isom, and Cutler. The conspirators in count III  the post-arrest conspiracy  were solely defendant and Mrs. Isom.
As the charges were actually read to the jury, the court inadvertently swapped the count II and count III conspirators. Thus on count II, the jury was instructed that the jury must find a conspiracy solely between defendant and Mrs. Isom to purchase the first kilo of cocaine.
As to count III, the jurors were instructed that the State must prove, inter alia, that "Douglas Isom agreed or conspired or combined or confederated with Anthony Cutler and or Gwendolyn Isom to cause trafficking in cocaine to be committed either by them or one of them or by some other person." Thus, the jury was incorrectly instructed that it could find a conspiracy between defendant and Cutler or a conspiracy between defendant and Mrs. Isom, or a conspiracy among all three. No one noticed the error, and no objection was made to the instructions as given. The prosecutor argued in closing that the sole conspiracy alleged in count III was a conspiracy between defendant and Mrs. Isom. The defendant argued that it was not possible for defendant to conspire with Cutler on count III because he was a police agent, and that there was insufficient input by Mrs. Isom on the tape to make her a conspirator with regard to the purchase of the additional cocaine.
Given that there was no objection made to the instruction actually given at trial, the question is whether the erroneous instruction amounted to fundamental error. On this point Williams v. State, 400 So.2d 542 (Fla. 3d DCA 1981), cert. denied, 459 U.S. 1149, 103 S.Ct. 793, 74 L.Ed.2d 998 (1983), is controlling. There, Chief Judge Schwartz said, "[W]hen it does not appear that the subject of the defective charge was an issue at the trial, our courts have repeatedly declined to reverse in the absence of timely objection." Id. at 545 (citations omitted).
At trial both sides agreed that Cutler could not be a conspirator on count III. The State's sole jury argument on count III was that the jury should convict because the tape showed agreement by defendant and Mrs. Isom to purchase the additional cocaine, and an intent to do so.
Defendant likewise argued that the sole issue was whether the tape contained sufficient evidence to show that Mrs. Isom was a part of the conspiracy to buy the additional cocaine. Defendant urged that Cutler's conduct had to be disregarded with respect to count III because he was a police agent. Defendant argued that the evidence of Mrs. Isom's participation was insufficient and therefore the count III conspiracy charge must fail.
Thus, as the case unfolded at trial, the material jury issue on count III was whether or not the evidence established a conspiracy between defendant and Mrs. Isom. The parties both agreed that the count III conspiracy charge could not be predicated on the conduct of Cutler. Because Cutler's conduct was not a material issue with respect to count III, we conclude that the incorrect, but unobjected to, instruction does not rise to the level of constituting *375 fundamental error. Williams v. State, 400 So.2d at 545; see also State v. Delva, 575 So.2d 643 (Fla. 1991); Morton v. State, 459 So.2d 322 (Fla. 3d DCA 1984), review denied, 467 So.2d 1000 (Fla. 1985).[2]
Defendant argues that the trial court erred by denying his motion to suppress the tape recording of the three-way conversation. The conversation was taped with the consent of Cutler, who had agreed to render assistance to the police authorities. Defendant argued that although Cutler had given consent to the taping, Cutler's consent was not voluntary.
The trial court ruled that defendant did not have standing to contest the voluntariness of Cutler's consent and denied the motion to suppress. While the ruling based on standing was in error, see State v. Jones, 562 So.2d 740 (Fla. 3d DCA 1990), we conclude that the point is not properly preserved for appellate review. There was no proffer of evidence bearing on the issue of voluntariness.[3] The other errors claimed with respect to denial of the motion to suppress are without merit. See McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); see also Florida v. Trody, ___ U.S. ___, 111 S.Ct. 2845, 115 L.Ed.2d 1013 (1991), vacating State v. Trody, 559 So.2d 641 (Fla. 3d DCA 1990), on remand, Trody v. State, 586 So.2d 440 (Fla. 3d DCA 1991); cf. Peoples v. State, 612 So.2d 555 (Fla. 1992) (where defendant was arrested on specific charges and invoked right to counsel, investigation of those charges by subsequent tape recording of defendant's telephone calls was forbidden because under the Florida Constitution, "once the ... right to trial counsel attaches and is invoked the State is barred from obtaining incriminating statements on a charged offense by knowingly circumventing an accused's right to assistance of counsel during a crucial encounter with the State.").
We find no merit in defendant's other arguments regarding his convictions of the substantive crimes.
We do find merit in defendant's claim of sentencing error. In this case the prosecutor sought and obtained a determination that the defendant was an habitual offender. The prosecutor argued that the habitual offender statute made mandatory the imposition of a life sentence. See § 775.084(4)(a)(1), Fla. Stat. (1987). Where, as here, the trial court appears to have proceeded under the incorrect assumption that the life sentence was mandatory, "we are `uncertain as to whether the court believed that it could in fact decline to impose that [life] sentence. We therefore believe that the interests of justice require us to vacate the sentence so that the trial judge may consider the matter as one within his discretion.'" Henry v. State, 581 So.2d 928, 929 (Fla. 3d DCA 1991) (quoting Smith v. State, 574 So.2d 1195 (Fla. 3d DCA 1991)); see also State v. Brown, 530 So.2d 51, 53 (Fla. 1988); McNair v. State, 563 So.2d 804 (Fla. 3d DCA 1990).
Defendant also argues, and the State concedes, that this case is controlled by the version of the habitual offender statute in effect prior to October 1, 1988, as the offenses in this case took place March 9, 1988. Since the sentencing took place long after the effective date of chapter 88-131, Laws of Florida, all parties participated in the sentencing on the incorrect *376 assumption that the habitual offender adjudication took the case out of the sentencing guidelines. In reality, as the State concedes, the trial court was required to give reasons for the departure sentence. State v. Brown, 530 So.2d 51, 52-53 (Fla. 1988); Whitehead v. State, 498 So.2d 863, 864-67 (Fla. 1986).
Where, as here, the trial court does not realize that it is imposing a departure sentence and therefore does not provide departure reasons, upon remand the trial court will be permitted to consider the appropriateness of a departure sentence and, if the court determines to enter a departure sentence, set forth valid reasons. State v. Betancourt, 552 So.2d 1107, 1108-09 (Fla. 1989); Roberts v. State, 547 So.2d 129, 130-31 (Fla. 1989). As already stated, if the trial court has valid reasons to impose a departure sentence, it is not automatically required to impose a life sentence but may in its discretion impose a life sentence or a sentence less than life.
For the reasons stated, the convictions are affirmed. The sentencing order is reversed and the cause remanded for resentencing.
Affirmed in part, reversed in part, and remanded for resentencing.
NOTES
[1] Defendant did not know that, as he spoke, Cutler was already under arrest and undercover police officers were listening to the conversation.
[2] There was sufficient evidence for the jury to find that defendant and Mrs. Isom were coconspirators, and defendant does not contend otherwise. Indeed, after review of the transcript of the three-way telephone conversation, it is difficult to imagine that the jury could take any view of this evidence which would exclude Mrs. Isom as a conspirator on count III. In addition, on count II the jury was instructed that it could convict if it found that defendant and Mrs. Isom were the conspirators with respect to the purchase of the first kilo of cocaine. (That count erroneously excluded Cutler as an alleged co-conspirator.) The jury convicted on count II as charged.
[3] The fact that Cutler was under arrest when he agreed to give substantial assistance to the police does not, without more, render involuntary his consent to the taping.

Cutler's own motion to suppress the tape recorded conversation and other statements Cutler had made, on grounds of involuntariness, was denied. Cutler's appeal on that point to this court was affirmed. Cutler v. State, 554 So.2d 617 (Fla. 3d DCA 1989).