# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D17-4074

———————————————

DAVID ELLIOTT MORAN,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

———————————————

On appeal from the Circuit Court for Columbia County.
Wesley R. Douglas, Judge.

September 9, 2019

ROWE, J.

David Elliott Moran appeals his conviction for conspiracy to commit first-degree murder. He raises two arguments for reversal. We affirm as to both and write only to address his argument that his motion for judgment of acquittal should have been granted.

*Background*

The charges against Moran stemmed from an FBI investigation into the activities of the Ku Klux Klan in the St. Augustine area. The FBI's domestic terrorism task force recruited a civilian confidential informant to infiltrate the Klan. The CI joined one of the three area chapters and obtained a high-level security position in the Klan by inflating his military credentials.

At a Klan gathering in December 2014, Moran, Charles Newcomb, and Thomas Driver approached the CI. The men asked him to help them plan the murder of a man who had assaulted Driver. Based on this conversation, the FBI equipped the CI with electronic devices to record his interactions with the three men. The recordings of several interactions led to charges against the three men for conspiracy to commit first-degree murder. Driver entered a plea. Moran and Newcomb went to trial.

*Trial*

At trial, the CI testified that Moran, Newcomb, and Driver first approached him about the murder plot during a Klan gathering. Moran told the CI that Driver needed his help. Driver explained that he was a corrections officer and that an inmate bit him during an altercation in the prison. Driver showed the CI a picture of the man. Driver said that the man tested positive for Hepatitis C. Blood tests first showed that the man transferred the disease to Driver. After he underwent months of blood tests to monitor the disease, Driver learned that the test produced a false positive.

Moran and Newcomb told the CI that they wanted him to do something about Driver's attacker, who had been released from prison. The CI asked Moran and Driver if he should beat up the man. They were not interested in a beating. The CI asked if they wanted the man "six feet under." Moran and Driver looked at each other, and then responded affirmatively. The CI asked Newcomb the same question, and Newcomb had the same response. The CI reported the conversation to the FBI. The FBI asked the CI to record future conversations with Moran, Newcomb, and Driver. Recordings of the interactions that follow were admitted into evidence and played for the jury.

First, the CI and Newcomb discussed what needed to be done about the attack on Driver. Newcomb called the attack "attempted murder." Newcomb expressed that he and Moran wanted to handle the situation without Driver's involvement. He stated that any action taken against the attacker should occur when Driver was at work so Driver would have an alibi.

2

Two weeks later, Newcomb asked the CI if he was available the next weekend to take care of Driver's problem. Newcomb told the CI that Moran said that he would join them. The CI told Newcomb that he would join them. The CI also reported that he located the attacker's home in Palatka and that a river was nearby.

The next weekend, the CI arranged to meet Moran and Newcomb at Newcomb's house. The three planned to drive to Palatka to find Driver's attacker. The CI arrived at Newcomb's house before Moran. Newcomb revealed that he had a cooler containing several bottles of his wife's insulin. He shared that they could kill Driver's attacker by injecting him with insulin. They could then dump the body into the nearby river. He thought they should bring a fishing pole to place near the man's body to make it appear that the man died while fishing.

When Moran arrived, the three men departed in the CI's car. The FBI had equipped the car with recording devices. The recorded conversation reveals Newcomb sharing with Moran the plan to inject Driver's attacker with insulin and to stage his death. Moran did not object. Instead, Moran declared that he was prepared to do whatever he needed to do. Moran added that if they were "going to do a complete disposal, we're going to chop up the body." Moran was concerned about the attacker's blood getting on him, so he put on a jacket for protection. As they approached Palatka, Moran pondered whether they ought to turn off their cell phones.

When the men arrived, they observed an unusually large police presence in the area. The FBI arranged the show of force to protect Driver's attacker from the men. The men abandoned their plans and drove back to Newcomb's home.

After they returned home, the CI asked Driver if he still wanted the problem resolved. Driver wanted his attacker terminated. The CI said he would hire a professional to take care of the problem and asked about Driver's work schedule "for alibi purposes."

The CI then reported back to the FBI. The FBI contacted Driver's attacker and obtained his cooperation to take a photograph that would make it appear that he had died from a

gunshot wound to the chest. The FBI gave the photograph to the CI to prove that the attacker was dead.

The CI then showed the photograph to Moran, Newcomb, and Driver. Newcomb voiced his satisfaction with the apparent murder. Driver stated that the attacker's death was what he wanted and that he was happy with the outcome. The CI next showed the photograph to Moran. Moran exclaimed: "Ha-ha, oh, shit. Ha-ha, oh, shit. I love it . . . . good job." He boasted that the attacker's death resulted from a group effort between the CI, Newcomb, Driver, and himself. This was the last of the recorded conversations.

Besides the recorded conversations, the State presented testimony from the medical examiner. He confirmed that the plan to inject the attacker with insulin likely would have caused death. He opined that injecting a non-diabetic person with two vials of insulin would cause death and it would be difficult to determine the cause of death during an autopsy. The State closed its case.

Moran's counsel moved for a judgment of acquittal, asserting that the evidence was insufficient to show that Moran conspired with Newcomb and Driver to kill Driver's attacker. He also argued that there was no conspiracy because the CI was the only person who planned to commit the essential act of the conspiracy—murder. The motion was denied.

The defense presented its case, and Moran testified. He stated that he knew Driver from work because they were both corrections officers. He explained that being assaulted by inmates was a common part of the job and that Driver was not angry about being bitten. Moran denied conspiring with Newcomb, Driver, and the CI to kill Driver's attacker. He claimed that he was unaware of the plan to drive to Palatka to find the attacker. Rather, he professed that he would not have allowed any harm to come to the man. When confronted with the recording of his reaction to the staged photograph depicting the dead man, Moran expressed embarrassment. He claimed that he was going along with the CI because he thought it was part of a Klan loyalty test.

4

The defense rested and Moran's counsel renewed the motion for judgment of acquittal. The trial court denied the motion. The jury found Moran guilty of conspiracy to commit first-degree murder. This appeal follows.

## Standard of Review

We review a trial court's ruling on a motion for judgment for acquittal de novo. *Dunn v. State*, 206 So. 3d 802, 804 (Fla. 1st DCA 2016). If the State presents competent, substantial evidence to establish every element of the crime, then judgment of acquittal is improper. *State v. Odom*, 862 So. 2d 56, 59 (Fla. 2d DCA 2003).

## Analysis

Moran contends that the trial court erred by denying his motion for judgment of acquittal. First, he argues that the evidence failed to show that he conspired to kill Driver's attacker. Second, he claims that there was no conspiracy because a necessary element of the conspiracy—the murder—was intended to be performed exclusively by the CI. We reject both arguments.

First, the State presented competent, substantial evidence to establish that Moran conspired with Newcomb and Driver to kill Driver's attacker. "A conspiracy exists where there is an express or implied agreement between two or more persons to commit a criminal offense and an intention to commit the offense. The fact-finder may infer the agreement from the circumstances; direct proof is not necessary." *Vasquez v. State*, 111 So. 3d 273, 275 (Fla. 2d DCA 2013) (internal citation omitted). And "[a] defendant may be found guilty of conspiracy if he had knowledge of the essential objective and voluntarily became a part of it, even if he lacked knowledge of all the details of the conspiracy or played only a minor role in the total operation." *Cummings v. State*, 514 So. 2d 406, 408 (Fla. 4th DCA 1987) (citing *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir. 1984)).

Moran knew the essential objectives of the conspiracy to kill Driver's attacker and fully intended to participate in the murder. Moran approached the CI to obtain his help to kill the attacker. Besides asking the CI to put the man "six feet under," Moran spoke

5

with Newcomb several times about the plot to kill the man. Moran made plans to confront the man at his home in Palatka. He talked with Newcomb about using insulin to kill the attacker and suggested chopping up the man's body before disposing of it. Moran's reaction to the staged photograph of the dead attacker underscores his knowledge of and participation in the murder plot. When shown the photograph, Moran was jubilant, not confused. He told the CI that the attacker's death was what he wanted, and he announced that the apparent murder resulted from a group effort between him, Newcomb, Driver, and the CI. His was not the reaction of a man with no knowledge of the murder plot. Viewed in the light most favorable to the State, the evidence was sufficient to allow the jury to conclude that Moran conspired to murder Driver's attacker. *See Bradley v. State*, 787 So 2d. 732, 740-41 (Fla. 2001) (concluding evidence was sufficient to find Bradley guilty of conspiracy to murder Mr. Jones where the testimony showed that Mrs. Jones wanted Mr. Jones dead, that Mrs. Jones and Bradley called each other right before and after the murder, and Bradley said he was expecting a payoff from Mrs. Jones).

Second, we reject Moran's argument that there could be no conspiracy because the CI was only the co-conspirator who was intended to perform the essential objectives of the conspiracy. It is true that there can be no criminal conspiracy where two or more persons conspire with a government agent with the intention that "an essential ingredient of the offense is to be *performed by, and only by, such government agent." Orantes v. State*, 452 So. 2d 68, 71 (Fla. 1st DCA 1984) (quoting *King v. State*, 104 So. 2d 730, 733 (Fla. 1957)) (emphasis added). But here, the CI was not the only person who agreed to participate in the murder. Moran made many statements and took several actions that showed his intent to participate in the murder of Driver's attacker.

Indeed, Moran approached the CI and confirmed the objective of the conspiracy—the murder of Driver's attacker. Moran told the CI he wanted the man put "six feet under." He made plans to meet with Newcomb and the CI to go to Palatka where the attacker lived. Moran made good on those plans and got into a car with Newcomb and the CI and drove to Palatka. The sole purpose of the trip was to find Driver's attacker and murder him. When Newcomb revealed how he planned to accomplish the murder—by injecting

the man with the insulin—Moran did not abandon the plan. Instead, he boasted about sending a message and confirmed that he was prepared to do what was necessary, including chopping up the body. When the trip to Palatka did not succeed, Moran suggested ways to lure the attacker out of his home on their next trip. And later, when he saw the photograph of what he thought was a dead man, Moran confirmed that the death resulted from a group effort. Viewed in the light most favorable to the State, the evidence was sufficient to allow the jury to conclude that the co-conspirators did not intend that the essential objective of the conspiracy would be performed by and only by the CI. Rather, Moran and Newcomb, by their words and actions, showed they were prepared to participate in the murder of Driver's attacker. *See Orantes*, 452 So. 2d at 71 (holding that the rule announced in *King* did not apply when the evidence showed that a non-government agent conspired to commit all the elements of the charged offense).

Because there was competent, substantial evidence to support the charge of conspiracy to commit first-degree murder, the trial court did not err in denying the motion for judgment of acquittal. Moran's judgment and sentence are AFFIRMED.

ROBERTS and KELSEY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Victor Holder, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Benjamin L. Hoffman, Assistant Attorney General, Tallahassee, for Appellee.