790 So.2d 1094 (2001)
Anthony BANKS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC00-1161.
Supreme Court of Florida.
July 13, 2001.
*1095 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Celia Terenzio, Bureau Chief, West Palm Beach, and August A. Bonavita, Assistant Attorney General, West Palm Beach, Florida, for Respondent.
PER CURIAM.
We have for review Banks v. State, 755 So.2d 142 (Fla. 4th DCA 2000), which expressly and directly conflicts with Consalvo v. State, 697 So.2d 805 (Fla.1996), Breedlove v. State, 413 So.2d 1 (Fla.1982), and Stevens v. State, 642 So.2d 828 (Fla. 2d DCA 1994). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth below, we quash the district court's decision and hold that Banks is entitled to a new trial because of the erroneous admission and use of hearsay evidence against him.

FACTS
Anthony Banks was charged with delivery of cocaine in violation of sections 893.03(2)(a)4 and 893.13(1)(a)1, Florida Statutes (1997), and resisting an officer without violence in violation of section 843.02, Florida Statutes (1997). The charges resulted from the sale of a piece of *1096 crack cocaine to an undercover police officer, Detective Marsha Roaden, by Jeffrey Goodman, a passenger in Banks' car. Following a jury trial, Banks was found guilty of delivery of cocaine as charged.[1]
On appeal, the Fourth District affirmed Banks' conviction for delivery of cocaine. See Banks v. State, 755 So.2d 142 (Fla. 4th DCA 2000). In so doing, the court rejected Banks' contention that the trial court erred in admitting Detective Roaden's testimony concerning out-of-court statements made by Goodman implicating Banks' direct participation in the drug transaction. The district court summarized Detective Roaden's testimony as follows:
Detective Roaden testified that she was working undercover and standing at a pay phone at a gas station when a car approached. Banks was the driver and Jeffrey Goodman was the passenger. Roaden was under surveillance by two other detectives located in a parked car. Goodman shouted for Roaden to come over to the car; Roaden complied and stood at the passenger window.
Goodman asked Roaden why she was waiting, and Roaden replied that she was waiting for a friend with some money. Goodman asked her what she needed. Before answering, Roaden asked Goodman if Banks "was straight up." Roaden explained to the jury that this is street parlance for someone who is "with the game plan or part of the business, or not the cops, wouldn't be susceptible to snitch out on you...." Goodman replied that Banks "was cool, he was okay, that he was with him." Shortly thereafter, Roaden stated that she was looking to purchase a fifty-cent piece, street parlance for fifty dollars worth of crack cocaine. Roaden stated that at that time, she was leaning into the car through the front passenger window, and Banks was looking at her. Goodman told Roaden there was no problem and asked when her friend would arrive with the money.
Roaden went to make a telephone call. When she returned to the car, Goodman pointed out a police surveillance vehicle. Roaden told them that if they were uncomfortable, they could go somewhere else to do the deal. Roaden said that her friend would bring the money and that if it was okay with them (Banks and Goodman), she would meet them in an alleyway. Goodman said, "Okay, no problem, and that he would be back and meet me there." Banks then drove the car away.
Roaden went to the alleyway, and Banks drove up ten or fifteen minutes later with Goodman, again, in the passenger seat. They pulled up to Roaden, who stood at the passenger side of the car. Roaden testified that
Mr. Goodman said that he knew that I was straight up, that I was okay, and that him and Mr. Banks had had a discussion while they were gone about the undercover vehicle being across the street at the Amoco and that if they saw that vehicle again, then they would know that I was either the cops or a snitch or trying to set them up

. . .
Goodman asked Roaden if she had the money; she answered yes and asked him if he had obtained the cocaine. Goodman replied affirmatively, then showed her the cocaine rock. Roaden handed Goodman fifty dollars. Roaden also asked the two men if she could get another piece the same size in about an *1097 hour, and Goodman replied "no problem." The conversation and transaction occurred while Banks silently listened and observed. Goodman did not testify.
During closing, the state argued:
A car drives up to her driven by Mr. Banks. He's present when ... Mr. Goodman ... starts talking about what is Roaden there for, and Roaden says to Goodman is he okay. Goodman says, yeah, he's cool, he's straight up. Do you know what that means?

Id. at 142-43 (first emphasis added). The jury convicted Banks and he appealed to the Fourth District claiming error in the admission of Goodman's statements directly implicating him in the crime.
In rejecting Banks' claim of error, the court concluded that Goodman's statements during the transaction, including his comments to the effect that Banks was "cool" and "straight up" (and the elaboration of the meaning of those terms), and that he and Banks were concerned about whether Roaden was a snitch, were not out of court statements offered to prove the truth of the matter asserted, but rather were "verbal acts" and, hence, admissible as non-hearsay. Although the court recognized that Goodman's statement to the effect that Banks was part of the deal may be viewed as offered for the truth of the matter asserted, particularly in light of the State's closing argument, the court noted that a statement's inadmissibility for one purpose does not preclude its admissibility for another. See id. at 144 (citing Breedlove v. State, 413 So.2d 1 (Fla.1982)). The court also commented that "the state's creative use of the admissible testimony in its argument does not impact upon the issue of admissibility." Id. Banks subsequently sought discretionary review in this Court.

ANALYSIS
Banks argues that the district court erred in concluding that Goodman's statements during the transaction to the effect that Banks was "cool" and "straight up" along with the police officer's explanation of what that meant, and that he and Banks were concerned about whether Roaden was a snitch did not constitute inadmissible hearsay. Banks contends that this testimony constituted inadmissible hearsay and was openly used by the State solely to establish the truth of the matters asserted in the statements, i.e., Banks' participation in the illegal drug transaction.
Hearsay is defined as a statement, other than one made by the declarant while testifying at trial or hearing, offered to prove the truth of the matter asserted. See § 90.801(1)(c), Fla. Stat. (1997). Hearsay is generally inadmissible for three reasons: (1) the declarant does not testify under oath; (2) the trier of fact cannot observe the declarant's demeanor; and (3) the declarant is not subject to cross-examination. See Breedlove, 413 So.2d at 6 (citing State v. Freber, 366 So.2d 426, 427 (Fla.1978)). However, merely because a statement is not admissible for one purpose does not mean that it is inadmissible for another. See id. Indeed, given the two-part definition of hearsay, "[t]he hearsay objection is unavailing when the inquiry is not directed to the truth of the words spoken, but, rather, to whether they were in fact spoken." Id.
One category of extrajudicial statements excluded from the hearsay rule is referred to as "verbal act" evidence. "Verbal act" evidence has been defined as:
A verbal act is an utterance of an operative fact that gives rise to legal consequences. Verbal acts, also known as statements of legal consequence, are not *1098 hearsay, because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted in it.
Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 801.11[3] (Joseph McLaughlin, ed. Matthew Bender 2d ed.2000); see also Charles W. Ehrhardt, Florida Evidence § 801.6 (2000 ed.). For utterances to be admissible as verbal acts, (1) the conduct to be characterized by the words must be independently material to the issue; (2) the conduct must be equivocal; (3) the words must aid in giving legal significance to the conduct; and (4) the words must accompany the conduct. See 6 Wigmore, Evidence § 1772 (Chadbourn rev. ed.1976).
For example, in Stevens v. State, 642 So.2d 828 (Fla. 2d DCA 1994), the defendant challenged the admissibility of an undercover police officer's testimony concerning a codefendant's (Hill) statements made during a drug transaction to the officer and the defendant. The officer testified that Hill approached him and asked what he was looking for. The officer responded that he was looking for a dime, i.e., $10 worth of cocaine. Following a discussion on the type and price, the officer testified that Hill walked toward the defendant and yelled, "I need a dime." The officer then stated that he observed the defendant reach into his pocket, grab several baggies, give one of the baggies to Hill, and put the rest back in his pocket. On appeal, the district court concluded that the officer's testimony as to Hill's statement was properly admissible under the verbal act doctrine since it served to prove the nature of the subsequent act by Hill rather than the truth of the statement. See id. at 829. The court stated that Hill's yelling out, "I need a dime," was not offered for the truth asserted, but to show that the defendant was a participant when he acknowledged Hill's statement by acting on it. See id. In other words, this statement was offered not so much for its truth or falsity, as it was to explain the defendant's reaction to it, i.e., the defendant's promptly acting to provide the illegal drugs to complete the transaction.
We conclude that the same cannot be said as to Goodman's statements to the effect that Banks was "cool" and "straight up," and that he and Banks were concerned that Roaden may be a snitch. These statements by Goodman to Roaden did not serve to explain the nature of the act or transaction, but rather directly implicated Banks in the transaction.[2] Indeed, Detective Roaden explained to the jury that the phrase "straight up" meant that the person was "with the game plan or part of the business." In other words, in this case being "cool" and "straight up" meant Banks was part of the deal. In addition, the testimony that Banks and Goodman had discussed Roaden being a possible police snitch also directly implicated Banks as Goodman's partner in crime.
Importantly, the State simply cannot point to any purpose for the admission of these statements other than for the truth of the matter asserted therein, i.e., that Goodman had stated that Banks was part of the deal. As we recently stated in Keen v. State, 775 So.2d 263 (Fla.2000), "[w]hen the only possible relevance of an out-of-court statement is directed to the truth of the matters stated by a declarant, the subject matter is classic hearsay even though the proponent of such evidence *1099 seeks to clothe such hearsay under a non-hearsay label." Id. at 274.[3] Similarly, we conclude that the particular statements in question here did constitute inadmissible hearsay and do not fit within the "verbal act" doctrine.
Banks also argues that the State improperly used the subject testimony during closing argument to further establish the truth of the matter asserted therein. The district court rejected this argument concluding, "As the statement was properly admitted as a verbal act, the state's creative use of the admissible testimony in its argument does not impact upon its admissibility." Banks, 755 So.2d at 144. This was error. In Consalvo v. State, 697 So.2d 805 (Fla.1996), we stated that "it is error to take the position that once material is `received in evidence, it will be received for any probative value it may have on any issues before the court.'" Id. at 813. Although the State primarily focused on Banks' actions in its closing argument, the State clearly used Goodman's statement that Banks was "cool" to establish the truth of the matter asserted therein. Even when statements are properly admitted as verbal acts, it would be improper for the State to use the statements thereafter for the truth of the matter asserted therein. See Conley v. State, 620 So.2d 180, 182-83 (Fla.1993) (holding that regardless of the purpose for which a party claims it has offered evidence, when an out-of-court statement is thereafter used as evidence to prove the truth of the matter asserted, such use is improper); see also Keen v. State, 775 So.2d 263, 274 (Fla.2000).
In considering whether the admission of these statements was harmful, we cannot conclude with any reasonable certainty that the jury did not rely on this particular testimony in reaching its decision. Of course, a person's mere presence at the site of a drug transaction is insufficient, in and of itself, to establish participation in the transaction. See, e.g., Johnson v. State, 581 So.2d 220, 222 (Fla. 2d DCA 1991). As noted above, the information contained within the objectionable statements was prejudicial and directly implicated Banks in the transaction.[4] It was also used in arguments by the State to the jury.[5] Further, the record reflects that the jury requested a read-back of Detective Roaden's testimony during deliberations. Under these facts, we cannot agree with the State's contention that any error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
For the forgoing reasons, we quash the decision of the district court of appeal and remand for further proceedings consistent herewith.
It is so ordered.
*1100 WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] At the close of the State's case, Banks moved for a judgment of acquittal as to both counts. The trial court denied the motion as to count one (delivery of cocaine), but granted the motion as to count two (resisting an officer without violence).
[2] In this case, the State prosecuted Banks as a principal to the crime. To be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime. See Staten v. State, 519 So.2d 622, 624 (Fla.1988); § 777.011, Fla.Stat. (1997).
[3] Banks does not contend that there was not sufficient evidence to implicate him in the transaction or that all of Goodman's statements made during the transaction are inadmissible hearsay. At oral argument, counsel for Banks conceded that some of the other statements would be admissible as verbal acts. Indeed, much of the conversation between Goodman and the undercover officer would appear to be admissible to explain Banks' conduct in driving the car to the eventual scene of the illegal transaction.
[4] Section 90.403, Florida Statutes (1997), provides in pertinent part that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."
[5] If viewed in isolation, we might conclude that this further error was harmless. However, in light of our previous determination as to the inadmissibility of the statements we cannot find the error harmless.