987 So.2d 222 (2008)
Carlos ANTUNES-SALGADO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-4876.
District Court of Appeal of Florida, Second District.
July 30, 2008.
*223 James Marion Moorman, Public Defender, and Jeffrey Sullivan, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Carlos Antunes-Salgado appeals from his convictions for trafficking in cocaine (400 grams or more) and conspiracy to traffic in cocaine (400 grams or more). Because Antunes-Salgado's counsel was ineffective and because the ineffectiveness is apparent on the face of the record, we reverse and remand for a new trial. This resolution renders Antunes-Salgado's other issues moot.
In early October 2005, a confidential informant (CI) arranged with an individual named Ofelia Tranquilino for the purchase of a large quantity of cocaine. During the cell phone calls that led up to the transaction, Tranquilino told the CI that other people would be with her at the transaction, but she did not tell the CI who those people would be.
Tranquilino subsequently arrived at the transaction location in a pickup truck. Martin Salvidia-Serena was driving, Tranquilino was in the passenger seat, and Antunes-Salgado was in the back seat behind the driver. Rumaldo Varga, Javier Reynoso, and Victor Romero-Reynoso arrived in a separate vehicle. Tranquilino got out of the pickup truck and approached the CI. She and the CI then returned to the pickup truck, and shortly thereafter the CI gave a signal to the police that indicated that the drugs were in the truck. When the police stormed the truck, they found five kilograms of cocaine in a closed pink "Hello Kitty" backpack on the floorboards between Antunes-Salgado's feet. Postarrest and post-Miranda,[1] Antunes-Salgado admitted that he knew the cocaine was in the backpack, but he told the officers that the cocaine belonged to Tranquilino and that his only involvement in the offense was to show the CI the cocaine in the backpack when he was told to do so by Tranquilino.
Antunes-Salgado was subsequently charged with both trafficking in cocaine and conspiracy to traffic in cocaine based on these events. None of Antunes-Salgado's codefendants was present at his trial.[2] Instead, the State sought to prove the *224 existence of the conspiracy through the postarrest and post-Miranda statements of Antunes-Salgado's codefendants as related by the police officer who took their statements. According to the officer, Tranquilino told him that Antunes-Salgado offered to pay Tranquilino $500 to deliver the cocaine. She also told the officer that Antunes-Salgado gave her the telephone number for the CI and gave her the cocaine on the morning of the transaction. The officer testified that Salvidia-Serena told him that Antunes-Salgado had agreed to forgive a debt Salvidia-Serena owed him if Salvidia-Serena would agree to drive Antunes-Salgado to the transaction. The officer further testified that Javier Reynoso said that Antunes-Salgado had offered to pay him $500 if he would follow Antunes-Salgado to the transaction. The two remaining codefendants each told the officer that they were, in essence, just along for the ride. Each of these statements minimized the respective declarant's involvement in the offenses and shifted the bulk of the involvement to Antunes-Salgado.
Defense counsel did not object to the admission of the codefendants' statements to the officer. Instead, just before the start of trial, defense counsel volunteered that he believed that the codefendants' statements were admissible under section 90.803(18)(e), Florida Statutes (2005), and he sought to have the court give the cautionary instruction provided for by that statute. However, defense counsel also told the court that he had not researched the admissibility issue, saying, "I have case law. I've been trying to look at it and I'll be looking at it from time to time during the morning to see if I can give the Court a little more guidance on how to handle this. I haven't had the situation before. There are some cases that are very lengthy and I'm trying to get to the meat of them." (Emphasis added.) The court did not question defense counsel's concession of the admissibility of these statements, and it agreed to give the cautionary instruction as requested.
Based on defense counsel's concession, the State presented the hearsay statements of each of Antunes-Salgado's codefendants during its case-in-chief. The State presented no other evidence to establish that Antunes-Salgado and the codefendants had a specific agreement to commit the crimes. The jury subsequently convicted Antunes-Salgado of both trafficking and conspiracy, and the trial court sentenced Antunes-Salgado to twenty-five years in prison with a fifteen-year minimum mandatory term on each count.
In this appeal, Antunes-Salgado admits that the issue of the admissibility of his codefendants' statements was not preserved for appellate review. However, he argues that defense counsel was ineffective for conceding the admissibility of these statements, which were the sole evidence supporting the conspiracy charge. On the specific facts of this case, we agree.
Ineffective assistance of counsel is found when counsel's performance falls outside the range of reasonable professional assistance and when there is a reasonable probability that the results of the proceeding would have been different but for the inadequate performance. Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As a general rule, claims of ineffective assistance of counsel may not be raised on direct appeal. See, e.g., Bruno v. State, 807 So.2d 55, 63 (Fla.2001); Stewart v. State, 420 So.2d 862, 864 n. 4 (Fla.1982); Corzo v. State, 806 So.2d 642, 645 (Fla. 2d DCA 2002). However, "appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is *225 indisputable, and a tactical explanation for the conduct is inconceivable." Corzo, 806 So.2d at 645. To obtain relief on the basis of ineffective assistance of counsel on direct appeal, the facts upon which the claim is based must be clearly evident in the record. Stewart, 420 So.2d at 864. Moreover, the ineffectiveness must be so clear that "it would be a waste of judicial resources to require the trial court to address the issue." Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla.1987); see also Ross v. State, 726 So.2d 317, 318 (Fla. 2d DCA 1998).
Here, the State charged Antunes-Salgado with conspiracy to traffic in cocaine pursuant to section 893.135(5), Florida Statutes (2005). This section provides that "[a]ny person who agrees, conspires, combines, or confederates with another person" to traffic in cocaine is guilty of conspiracy to traffic. In order to obtain a conviction for this offense, the State had to prove more than that Antunes-Salgado was present at the scene of the offense with knowledge of the offense. See, e.g., Chaparro v. State, 873 So.2d 631, 633 (Fla. 2d DCA 2004); Mickenberg v. State, 640 So.2d 1210, 1211 (Fla. 2d DCA 1994); Baxter v. State, 586 So.2d 1196, 1199 (Fla. 2d DCA 1991); Jimenez v. State, 535 So.2d 343, 344 (Fla. 2d DCA 1988). The State also had to prove more than that Antunes-Salgado aided or abetted the crime. See, e.g., Baxter, 586 So.2d at 1199; Ramirez v. State, 371 So.2d 1063, 1065 (Fla. 3d DCA 1979). Instead, the State had to prove the existence of an express or implied agreement between Antunes-Salgado and at least one other person to commit the trafficking offense at issue. See Jimenez, 535 So.2d at 344.
To meet its burden to prove that Antunes-Salgado was involved in a conspiracy, the State relied on the postarrest statements made by his codefendants to police during formal, post-Miranda interrogations as testified to by the police officer who took the statements. Defense counsel conceded to the admissibility of these statements; however, the statements were not admissible for four different reasons.
First, contrary to defense counsel's belief at trial, the statements were not admissible under section 90.803(18)(e). Section 90.803(18)(e) provides for the admission of statements made by coconspirators during the course of the conspiracy and in furtherance of it. Longstanding Florida caselaw holds that statements made after the crime has been committed and that do not "further" the conspiracy are inadmissible under section 90.803(18)(e). See, e.g., Brooks v. State, 787 So.2d 765, 772 (Fla.2001) (holding that statements made by coconspirator long before any agreement to commit a crime was made did not "further" the conspiracy and were therefore inadmissible); Usher v. State, 642 So.2d 29, 31 (Fla. 2d DCA 1994) (holding that statements made by a coconspirator after the kidnapping had been accomplished were not admissible under section 90.803(18)(e)); Isom v. State, 619 So.2d 369, 372 (Fla. 3d DCA 1993) (holding that coconspirator's postarrest statements were not in furtherance of the conspiracy and so were not admissible under section 90.803(18)(e)); Thomas v. State, 349 So.2d 743, 744 (Fla. 1st DCA 1977) (holding that coconspirator's statement to police during the course of the conspiracy was intended to expose the conspiracy rather than further it and so was not admissible under section 90.803(18)(e)).
Here, there is no question that Antunes-Salgado's alleged coconspirators' postarrest and post-Miranda statements occurred after the conspiracy was over and did nothing to "further" the conspiracy. *226 Therefore, the statements were inadmissible under section 90.803(18)(e), and defense counsel was ineffective for conceding admissibility on this basis.
Second, the statements are not admissible under section 90.804(2)(c) as statements against interest. Section 90.804(2)(c) permits the admission of statements which are "so far contrary to the declarant's pecuniary or proprietary interest... that a person in the declarant's position would not have made the statement unless he or she believed it to be true." However, this statute does not provide for the admission of the portions of a nontestifying codefendant's confession that implicate the defendant. See, e.g., Lilly v. Virginia, 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (holding that the portions of a non-testifying accomplice's confession that implicate the defendant do not fall within any hearsay exception); Williamson v. United States, 512 U.S. 594, 600-01, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (holding that the federal counterpart to section 90.804(2)(c) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory"); Brooks, 787 So.2d at 775 (same).
Here, while Antunes-Salgado's codefendants' statements were partially self-inculpatory, the State also presented those portions of the statements that implicated Antunes-Salgado and that shifted the majority of the guilt to him. These portions of the statements were inadmissible under section 90.804(2)(c) and Lilly and Williamson, and defense counsel was ineffective for failing to object on this basis.
Third, even if the codefendants' statements could somehow be shoehorned into a hearsay exception, they were inadmissible under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Crawford prohibits the admission of "testimonial" hearsay because it violates the Confrontation Clause. Id. at 51, 124 S.Ct. 1354. While Crawford notes that statements of coconspirators are generally nontestimonial, that statement in Crawford was made in reference to statements made in furtherance of the conspiracy. Id. at 56, 124 S.Ct. 1354. Moreover, Crawford specifically holds that statements made during police interrogations are testimonial and therefore inadmissible. Id. at 53, 124 S.Ct. 1354.
Here, Antunes-Salgado's codefendants' post-Miranda statements to the police were clearly testimonial and thus clearly inadmissible under Crawford. The statements were made in response to a police interrogation, and they were not statements made in furtherance of the conspiracy. Therefore, defense counsel was ineffective for failing to object on this basis as well.
Fourth, contrary to the State's assertion in this appeal, the statements at issue are not nonhearsay "verbal acts." "Verbal acts" are statements made during the course of an act or transaction that explain the nature of the act. See, e.g., Banks v. State, 790 So.2d 1094, 1097-98 (Fla.2001); Harris v. State, 544 So.2d 322, 323 (Fla. 4th DCA 1989). These types of statements are not hearsay because they are not offered for the truth of the matter asserted but instead are offered to show the effect of the statement on the defendant because that effect has some independent legal significance.
For example, in Banks, an undercover police officer was standing at a pay phone when a car driven by Banks approached. 790 So.2d at 1096. Banks' passenger, Goodman, spoke to the officer and asked her what she needed. Id. The officer first asked Goodman whether Banks was *227 "straight up." Id. After Goodman replied that he was, the officer asked Goodman if she could purchase drugs from him. Id. Goodman told the officer that it would be no problem, but he was concerned about a car that he believed to be an undercover police car, so the officer offered to meet them in an alley a short distance away. Id. A few minutes later, Banks drove into the alley with Goodman still in the passenger seat. Id. Goodman then sold the officer the drugs. Id. Goodman did not testify at trial, and Banks challenged the admission of Goodman's statements as hearsay; however, the trial court admitted the statements.
On appeal, the supreme court noted that many of the statements Goodman made to the officer arranging the drug sale and arranging to meet in the alley appeared to be admissible as "verbal acts" because those statements explained Banks' conduct in driving the car into the alley after the initial encounter. Id. at 1099 n. 3. That conduct had independent legal significance because it implicated Banks in the transaction. Id. However, the statement that Banks was "straight up" was not a verbal act because it did not explain the nature of the act or transaction but rather simply implicated Banks in the transaction. Id. at 1098. Therefore, the statement directly incriminating Banks was not a verbal act and was not admissible. Id.
Similarly, in Stevens v. State, 642 So.2d 828 (Fla. 2d DCA 1994), the State sought to admit an officer's testimony concerning his conversation with Stevens' codefendant, Hill. The officer testified that he told Hill that he needed "a dime," or $10 worth of cocaine. Id. at 829. At that point, Hill walked toward Stevens and yelled, "I need a dime." Id. Stevens then reached into his pocket, grabbed a bunch of plastic baggies, and gave one to Hill. Id. Hill then returned to the officer with a bag of cocaine. Id. This court held that the admission of Hill's statement, "I need a dime," was proper because it was a "verbal act." Id. The statement was not offered for the truth of the matter, but rather to explain Stevens' actions in response to the statement, which established that he was involved in the crime itself. Id.
As these cases demonstrate, a "verbal act" is a statement that is relevant because it explains some observed act by the defendant. Thus, for example, had Tranquilino told the CI that Antunes-Salgado would be accompanying her to the transaction, that statement would have been a "verbal act" because it would have served to explain Antunes-Salgado's presence in the back seat of the truck and might have established his involvement in the transaction. However, none of the statements actually offered by the State at trial were relevant to explain any act by Antunes-Salgado. Instead, the statements are relevant only to prove the truth of the matter asserted in them; i.e., that Antunes-Salgado had an agreement with the codefendants to deliver cocaine to the CI. While the State contends that the statements were not hearsay because they were not offered to prove that Antunes-Salgado actually paid for his codefendants' assistance, the State cannot point to any purpose for the admission of these statements other than to prove the truth of the matter asserted in them concerning an alleged agreement between Antunes-Salgado and the codefendants to deliver cocaine. "When the only possible relevance of an out-of-court statement is directed to the truth of the matters stated by a declarant, the subject matter is classic hearsay even though the proponent of such evidence seeks to clothe such hearsay under a nonhearsay label." Keen v. State, 775 So.2d 263, 274 (Fla.2000). Thus, the statements were not "verbal acts," and defense counsel *228 was ineffective for not objecting to their admission on this basis.
Having determined that defense counsel's concession to the admissibility of these statements constituted ineffective assistance, we must next consider whether Antunes-Salgado was prejudiced by their admission. Here, it is clear that he was. Without these statements, the State's only evidence to support a finding of a conspiracy was Antunes-Salgado's presence in the vehicle at the time the transaction was supposed to occur and his possible constructive possession of the drugs in question. While these facts might establish that Antunes-Salgado was a principal to the transaction or aided and abetted the delivery, they are insufficient to establish a conspiracy. See, e.g., Chaparro, 873 So.2d at 633; Mickenberg, 640 So.2d at 1211; Baxter, 586 So.2d at 1199. The "agreement" element of the conspiracy charge was established solely through the inadmissible hearsay statements of Antunes-Salgado's codefendants. Therefore, the prejudice to Antunes-Salgado from the admission of these statements is patent.
Moreover, this court cannot say that the improper admission of these statements was harmless as they relate to the trafficking conviction. To prove the trafficking offense, the State had to prove that Antunes-Salgado knowingly sold, purchased, manufactured, or delivered the cocaine or that he was knowingly in actual or constructive possession of it. § 893.135(1)(b)(1). Here, the State did present some evidence apart from the codefendants' statements that would support a jury's finding that Antunes-Salgado was in actual or constructive possession of the cocaine. However, that evidence was disputed at trial. Because of the disputes in the evidence and the sheer number of codefendants' statements admitted into evidence, this court cannot say beyond a reasonable doubt that the admission of the statements did not have some effect on the jury's determination of the trafficking charge. See State v. DiGuilio, 491 So.2d 1129, 1138-39 (Fla.1986) (holding that to establish harmless error, the State must prove beyond a reasonable doubt that the error did not contribute to the verdict and that to find an error harmless this court must be able to "say beyond a reasonable doubt that the error did not affect the verdict"). Therefore, on this record, we cannot say that the error was harmless as to that charge.
Finally, having determined that counsel was ineffective and that Antunes-Salgado was prejudiced, we must consider whether there was any conceivable tactical reason that would excuse the apparent ineffectiveness. Here, there is not. The record on appeal does not show that defense counsel sought any pretrial rulings excluding these hearsay statements. There are no written motions in limine filed and no transcripts of any pretrial hearings addressing the issue. Moreover, after jury selection and immediately before opening statements, defense counsel told the trial court that he believed that the codefendants' statements were admissible but that he had not researched the issue and had not faced this situation previously. Thus, by his own admission, defense counsel made critical concessions favorable to the State without knowing or having fully researched the law or the accuracy of his interpretation of it. In other words, counsel conceded the admissibility of inadmissible statements that ultimately convicted his client without having researched the admissibility issue. Generally, important legal concessions are made after, not before, the applicable law is researched. Because defense counsel's own statements establish that there was no reasonable strategic or tactical reason for his decision not to object, a hearing at *229 which defense counsel would be required to reiterate his prior explanations would be a waste of judicial resources.
Reversed and remanded for a new trial on both charges.
WALLACE, J., Concurs.
WHATLEY, J., Concurs in result only.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] There is some indication in the record that all of the codefendants had fled the jurisdiction; however, the issue of their actual availability was never developed at trial.